IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr38-MHT |
| | ) | (WO) |
| REINIER PEREZ-RIVES | ) | |

OPINION AND ORDER

This case is currently before the court on the government's motion for a psychiatric examination of defendant Reinier Perez-Rives by the Bureau of Prisons (BOP) for purposes of sentencing. For the reasons that follow, the motion is granted only to the extent, at this time, that the government may obtain an expert of its choosing to conduct a mental-health evaluation of the defendant in the local community.

I. Background

Perez-Rives pled guilty, pursuant to a plea agreement, to one count of conspiracy to commit wire fraud, *see* 18 U.S.C. § 1349, and one count of aiding and

abetting aggravated identity theft, *see* 18 U.S.C. §§ 1028A and 2.

At his sentencing hearing, Perez-Rives moved for a downward variance based in part on his contention that his mental illness and substance-abuse disorders contributed to his offense conduct. According to a psychological report commissioned by the defense, he was suffering from Major Depressive Disorder, Alcohol Use Disorder, Cocaine Use Disorder, and Marijuana Use Disorder at the time he committed the offense conduct. *See* Flores Report (doc. no. 108-2) at 13. The psychologist, Dr. Adriana Flores, opined that, as a result of these disorders, Perez-Rives's "judgment was likely impaired" at the time he committed the offense conduct, and "[t]here appear[ed] to be a direct correlation between Mr. Perez-Rives's mental health and his commission of the offense." *Id.*

In response to Flores's report, the government moved for its own psychiatric evaluation, to be conducted at a BOP facility. The government argued that, if the court

intends to rely on Flores's report in fashioning a sentence, the government should be allowed obtain its own psychological evaluation to present as rebuttal evidence. Instead of acquiring a local evaluation as the defense did, the government requested an order of the court requiring Perez-Rives to submit to a longitudinal, in-patient psychiatric examination at a BOP facility--a facility that would be substantially distant from the current venue of these proceedings, that is, the Middle District of Alabama. The government further argued that the evaluation should be done at the BOP because it will be more comprehensive, because of the expertise and experience of the BOP staff, and because an evaluation by the BOP may be more trustworthy than an evaluation by an expert paid by either side. Perez-Rives objected to having the examination conducted at a BOP facility, but did not object to submitting to a psychiatric evaluation locally by an expert selected by the government.

## II. Analysis

A sentencing court has authority, under 18 U.S.C. § 3552(b), to order a study of a convicted defendant when it "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed." Studies ordered pursuant to § 3552(b) are to be conducted in the local community, unless at least one of two conditions are met. The statute provides: "*The study shall be conducted in the local community* by qualified consultants *unless* the sentencing judge finds that there is a compelling reason for the study to be done by the Bureau of Prisons or there are no adequate professional resources available in the local community to perform the study." 18 U.S.C. § 3552(b) (emphasis added).

Therefore, for a court to order an evaluation pursuant to § 3552(b), it must (1) desire more information than is otherwise available to it and (2) order the evaluation to be conducted locally, unless (a) there is a compelling reason for the study to be done by

4

BOP or (b) there are no adequate professional resources available in the local community to perform the study.

This court has held that there are certain circumstances under which a sentencing judge could reasonably "desire more information" and order a § 3552(b) study. In particular, this court has held that where there is a reasonable basis to believe that a defendant's drug addiction or mental disease or defect contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation pursuant to § 3552(b) to help determine (1) how a defendant's mental disorder(s) might, for sentencing purposes, mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during supervised release. *See United States v. Mosley,* 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (Thompson, J.).

In *Mosley*, the court on its own ordered an evaluation under § 3552(b) because it wanted, for sentencing purposes, specific information that would be best

addressed by a comprehensive, longitudinal evaluation. Because the court found that there were no adequate professional resources available locally to conduct such an evaluation in the jail where Mosley was housed, and because Mosley presented too high a risk of relapse to be released into the community for the evaluation, the court sent Mosley to the BOP for a presentence study of his mental health. *See id.* at 1297-1300. Thus, in *Mosley*, all of the conditions of § 3552(b) were present: the court desired more information, there was a compelling reason for the study to be conducted by the BOP, and locally available professional resources were not adequate.

Although Perez-Rives's case presents a situation in which ordinarily the court could reasonably "desire more information" and be inclined to order a § 3552(b) evaluation, the defense has already procured an evaluation that addresses the issues raised in *Mosley*--that is, both culpability and treatment--and it appears the psychologist did a comprehensive job despite

6

the constraints of the jail setting.  In preparation for the evaluation, Flores reviewed all of the discovery materials from Perez-Rives's case and interviewed his brother by telephone.  She evaluated Perez-Rives over the course of more than four hours, during which time she conducted a clinical interview with psychosocial history and administered three examinations: (1) the Mini Mental State Exam, (2) the Structured Interview Malingered Symptomatology, and (3) the Personality Assessment Inventory.[1]  *See* Flores Report (doc. no. 108-2) at 1.  Her conclusions--that Perez-Rives was suffering from Major Depressive Disorder, Alcohol Use Disorder, Cocaine Use Disorder, and Marijuana Use Disorder, which together contributed to the offense conduct, and that he should receive treatment for depression and substance-abuse--directly address the concerns the court raised in *Mosley*.

---

1.  The Personality Assessment Inventory was administered only in part, due to the evaluation being cut short by jail personnel for administrative reasons.  *See* Flores Report (doc. no. 108-2) at 1.

Thus, because Perez-Rives has already received an evaluation that satisfies the *Mosley* concerns, the first question before the court is whether the government has convinced the court that it still needs more information about Perez-Rives than is otherwise available prior to making a sentencing determination. *See* 18 U.S.C. § 3552(b). The government seeks to present its own evidence regarding Perez-Rives's mental-health. *See Kansas*, 134 S. Ct. at 601 ("When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him."). Because the court believes that, in this case, the government should have the opportunity to add to the evidence so that it adequately reflects the positions of both sides, the court "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed." 18 U.S.C. § 3552(b). Indeed, as stated

8

previously, Perez-Rives does not object to this conclusion.

The next and more significant question here is whether the court should order, as requested by the government, that Perez-Rives's evaluation be done at the BOP. Unlike the defendant in *Mosely,* Perez-Rives does object to his evaluation not being done locally.

As stated, to authorize an evaluation that is not local, the court would need to find that there is a compelling reason for the study to be conducted at the BOP or that adequate professional resources are not available locally. As to the latter, no showing has been made to enable the court to find that "there are no adequate professional resources available in the local community to perform the study." 18 U.S.C. § 3552(b). While the government briefly stated that it could not find a local psychologist, it offered no details, explanation, or evidence to show that it actually tried.[2]

---

2. A professional need not have his or her office in the local area in order to be "available in the local

9

Further, unlike in *Mosley*, the court has no reason to believe the resources available locally are inadequate to perform the study: the government has not argued, and the record does not support, that a longitudinal assessment at the BOP, rather than a locally performed assessment, is necessary due to specific aspects of Perez-Rives's condition or history.[3]

Because no showing has been made that the study cannot be performed locally, the court can commit Perez-Rives to the BOP for an evaluation under § 3552(b) only if it finds "a compelling reason" for the study to

---

community" to do the evaluation. For example, defense counsel's expert drove in from Georgia.

3. As stated, an important difference between the instant case and *Mosley*, is that here Perez-Rives objects to being sent to the BOP. While the court acknowledged in *Mosley* that a defendant's due process rights might be implicated by the decision to transfer him to the BOP for an evaluation, it did not reach the issue because Mosley consented to the transfer. *See Mosley*, 277 F. Supp. 3d at 1300. Here, Perez-Rives's objection raises due process concerns. However, as the court is denying the motion under § 3552(b), it need not reach the issue of what must be shown under the Due Process Clause to commit Perez-Rives to the BOP at this time.

be conducted at the BOP. 18 U.S.C. § 3552(b). There are few cases discussing what qualifies as a "compelling reason" under § 3552(b). *See United States v. Donaghe*, 924 F.2d 940, 945 (9th Cir. 1991) (noting a lack of case law on this issue).

Nevertheless, the government has not shown that its reasons--the comprehensiveness of a study at BOP, the expertise of BOP doctors, and the inherent trustworthiness of the BOP compared to partisan experts--are sufficient to commit a defendant to the BOP. It has not shown that locally available resources could not conduct a comprehensive study; that locally available resources do not possess sufficient expertise; or that local available resources are not neutral, as the government implies is the case with the BOP.

As presented, these reasons are nothing more than generalizations. If a mere recitation of these reasons was sufficient under § 3552(b), the court could send a defendant to the BOP at will, if not at whim. The

requirement that the reasons be "compelling" would be eviscerated.

Thus, while the court is willing to provide the government an opportunity to secure a psychological evaluation of Perez-Rives, the government has not shown that an adequate evaluation cannot be conducted locally, or otherwise demonstrated a compelling reason for the BOP to perform the study.

***

Accordingly, in the absence of an adequate reason to commit defendant Perez-Rives to the Bureau of Prisons, it is ORDERED that:

(1) The government's motion for a psychiatric examination (doc. no. 110) is granted to the extent that it has leave to have an expert of its choosing conduct a mental-health examination of defendant Perez-Rives locally.

(2) The motion is denied in all other respects at this time. The government may renew the motion with (a) an evidentiary showing, under 18 U.S.C. § 3552(b), that

there are no adequate professional resources available to conduct a mental-health evaluation in the local community or that there are compelling reasons for a Bureau of Prisons evaluation and (b) reasons why an evaluation at the Bureau of Prison would not violate defendant Perez-Rives's due process rights.

DONE, this the 14th day of March, 2018.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**